UNITED STATES of America

v.

James G. BRYAN, Defendant.

No. CR–3–87–116–T.

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 17, 1987.

David Barger, U.S. Atty., Dallas, Tex., for plaintiff.

Dan G. Baucum, Dallas, Tex., for defendant.

## ORDER DENYING MOTION TO DISMISS BECAUSE OF DOUBLE JEOPARDY

MALONEY, District Judge.

On August 20, 1987, Defendant James G. Bryan[1] filed his Motion and Memorandum to Dismiss (Double Jeopardy). On September 10, 1987, this Court held an evidentiary hearing on his motion, at which Bryan was not present. On October 23, 1987, the Court entered an order directing Bryan to read the transcript of the September 10, 1987, hearing and to appear before this Court on October 29, 1987, to add to the record anything that he deemed essential to the Court's consideration in ruling on his motion to dismiss.

---

1. This opinion is applicable only to Defendant James G. Bryan and not to Defendant Robert Bryan who also has a motion to dismiss because of double jeopardy pending before this Court.

On October 29, 1987, Bryan appeared as required and stated that he did not wish to add anything to the record.

## I. Background

In March, 1985, Bryan was named in a fifty-one count indictment in Portland, Oregon. He was convicted on all counts in April, 1987. One count charged Bryan and three other defendants with conspiracy to defraud the United States by impeding, impairing, disrupting and defeating the lawful governmental function of the Treasury Department and its agencies, including the Internal Revenue Service, in the ascertainment and collection of the revenue, a violation of 18 U.S.C. § 371.

On April 30, 1987, Bryan was named in a twenty-five count indictment in Dallas, Texas. Count One in that indictment also charges Bryan with conspiracy to defraud the United States in violation of 18 U.S.C. § 371.

## II. Contentions of the Parties

Bryan now moves to dismiss Count One of the Dallas indictment on the grounds that the conspiracy it alleges is the same conspiracy for which he was convicted in Portland and therefore violates the double jeopardy clause of the fifth amendment of the Constitution of the United States. He likens the conspiracy to a partnership that started small and grew into a large company, and contends that the government cannot simply choose a point in time and state that one conspiracy ended and another began.

█ The Government's response is that Bryan made two separate agreements with two different groups of people. The first was a small group and the second was a large group, coincidentally including three of the same people. The Government urges that the Court carry Bryan's motion until trial, contending that if it should appear after all the facts are shown that Bryan's position is correct, then the Court could dismiss the conspiracy count. The Government relies on *U.S. v. Colunga,* 786 F.2d 655 (5th Cir.1987), for the proposition that if the Court finds that there was only one conspiracy, the solution would simply be to not sentence Defendant on the Dallas

conspiracy charge, if he is convicted. This Court is of the opinion that *Colunga* created a retrospective remedy and is not applicable here, where the defendant has not yet been tried for the second conspiracy. The fifth amendment guarantees Bryan's right not to be prosecuted more than once for the same offense. *United States v. Stricklin,* 591 F.2d 1112 (5th Cir.1979). However, should a court find before trial that there is no double jeopardy, the court may later vacate its finding as the evidence develops at trial, if the defendant renews his motion and the evidence shows that there was, in fact, prior jeopardy. *Stricklin,* at 1119.

█ After considering the alleged facts of this case, the Dallas indictment, the Portland indictment, and the Portland trial transcript, the Court agrees with the Government's contentions and finds that Bryan was involved in two separate conspiracies to defraud the United States, as explained below.

## III. Prima Facie Showing of Double Jeopardy

█ A defendant has the burden of tendering a prima facie nonfrivolous double jeopardy claim. If the court determines that the defendant has satisfied this burden, the burden of persuasion shifts to the Government, which then must prove by a preponderance of the evidence that there were two separate conspiracies. *Stricklin,* at 1117–18. A defendant can make a prima facie showing of double jeopardy by reference to the indictments, and then-existing record material alone. *Stricklin,* at 1118.

The Court finds that Bryan has made a prima facie, nonfrivolous showing of double jeopardy. The burden therefore shifts to the Government to show by a preponderance of the evidence that there were, in fact, two conspiracies and that Bryan is not put in double jeopardy by Count One of the Dallas indictment.

## IV. Analysis of the Conspiracy Counts

█ It is the agreement to commit one or several crimes which constitutes the gist of a conspiracy. Although two or more

people may agree to commit several crimes, that agreement creates only one conspiracy. Only when people make more than one agreement does more than one conspiracy exist. *Braverman v. United States,* 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942). For the Government to prosecute Bryan for the two conspiracies with which he has been charged, it must show by a preponderance of the evidence that Bryan entered into two separate agreements to defraud the United States.

■ The Government and Bryan agree that *United States v. Marable,* 578 F.2d 151 (5th Cir.1978), sets forth the appropriate criteria for determining whether one or two conspiracies existed. These criteria are: 1) the time-frames of the charged conspiracies; 2) the persons acting as conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the Government or any other description of the offense charged which indicates the nature and scope of the activity which the Government sought to punish in each case; and 5) the places where the events alleged as part of the conspiracy took place.

## V. The *Marable* Criteria and the Facts in the Instant Case

### A. *The time-frames of the charged conspiracies.*

The Portland indictment charged, and the jury found, that a conspiracy existed from 1977 until December 31, 1984. The Dallas indictment charges that a conspiracy existed from the beginning of 1981 until the end of 1985. Bryan submits that the time periods of the two alleged conspiracies show that there was only one conspiracy because they overlap almost completely.

While the Court agrees that the alleged durations of the two conspiracies substantially overlap, the time periods charged in the indictments are but one factor for the Court to consider and will not alone prove that there was one conspiracy. The Court notes that the time periods charged differ by five years: there is a four-year difference as to when the conspiracies started, and a one-year difference as to when they ended. Further, the overt acts charged in

each conspiracy do not overlap, as explained in section D below.

### B. *Persons acting as conspirators.*

The Portland indictment named four defendants. The Dallas indictment names twenty-two. Three of those named in the Dallas indictment, one of which is Bryan, were also named in the Portland indictment. Bryan stresses the duplication of three defendants in the two indictments. The Government, on the other hand, stresses the non-duplication of the other nineteen defendants. While Bryan maintains that the other nineteen defendants could have been named in the Portland indictment, the Government produced evidence that this was not the case. The special agent who investigated the conspiracy in Portland testified that the names of the other nineteen defendants never surfaced during his investigation of that case.

In the Dallas indictment, the conspiracy count centers around the franchising of the United States Tax Planning Service (USTPS) and the fraudulent tax shelters it promoted. Eight of the Dallas defendants are alleged to have operated franchises of the USTPS in different states across the nation. Nowhere in the Portland indictment is Bryan charged with franchising the USTPS. The conspiracy count in the Portland indictment does not discuss the operation of, nor even mention, the USTPS. Further, of the four defendants named in the Portland indictment, none are alleged to have been licensees or franchisees of USTPS.

In the Portland conspiracy, Bryan was the person who promoted and sold the tax shelters to clients. Testimony in the Portland trial from Bryan's clients consistently reveals that Bryan himself promoted and sold the tax shelters. The other three defendants each played a supporting role: secretary, lawyer, and financial assistant. In the Dallas conspiracy, at least eight of the defendants performed the same role as Bryan did in Portland: they promoted and sold tax shelters through franchise offices of USTPS, Bryan's tax planning company. The three defendants charged in the Port-

land conspiracy continued playing the same roles in the Dallas conspiracy.

The wide dissimilarity of defendants in the two indictments, the fact that the nineteen defendants named in the Dallas indictment could not have been named in the Portland indictment, and the very different roles the defendants allegedly played in the two conspiracy counts, support the assertion of two separate conspiracies. The fact that three people joined in both conspiracies does not create an identity of conspirators between the two indictments.

### C. The statutory offenses charged in the indictment.

There is some similarity and some difference in the statutory offenses charged in the two indictments. The Portland indictment charged twenty counts of mail fraud. None is charged in the Dallas indictment. Twenty counts of tax fraud were charged in Portland; twenty-five in Dallas. Bryan contends that the similarities of the counts weigh heavily in favor of finding one conspiracy. The Government contends that none of the Portland and Dallas tax fraud counts overlap because no clients in the Portland case are also involved in the Dallas case. Further, the Portland tax returns concerned the years 1978, 1979, and 1980. The Dallas tax returns concern the years 1981, 1982, and 1983.

The differences in the statutory violations of the two indictments weigh in favor of finding two separate conspiracies.

### D. The overt acts charged or any other description of the offense charged which indicates the nature and scope of the activity which the Government sought to punish in each case.

The essence of the conspiracy charged in the Portland indictment is the agreement of the defendants involved to aid Bryan in his establishment of various tax shelters and in the preparation of false tax returns for his clients. The essence of the conspiracy charged in the Dallas indictment is the establishment of franchises of Bryan's "tax-planning" company, the USTPS, which were operated by defendants named in the Dallas indictment but not the Portland indictment.

The Dallas indictment alleges that in December, 1980, Bryan moved from Oregon to the Cayman Islands, where he created the USTPS. There was testimony at the September 10, 1987, hearing in this Court that all of the USTPS franchises were established *after* Bryan fled to the Cayman Islands.

While the types of tax shelters that Bryan used in Oregon and by the USTPS were similar in nature, the similarity of the vehicles for committing crimes does not mean that Bryan was involved in only one conspiracy. Nor does the fact that both conspiracies took advantage of the Cayman Islands' secrecy laws indicate that there was, in fact, only one conspiracy. These similarities do not go to the existence or non-existence of a second agreement. They simply indicate that Bryan agreed with people different from those charged in the Portland indictment to defraud the United States using a method similar to that which he used when defrauding the United States in the Portland conspiracy.

The descriptions of alleged activities and methods of the defendants in each of the two indictments supports a finding that Bryan was involved in two separate conspiracies.

### E. The places where the events alleged as part of the conspiracy took place.

In both conspiracies, Bryan had considerable contact with the Cayman Islands. He advised clients to maintain bank accounts there; he held tax planning seminars there; and he conducted various other aspects of his business there. Bryan told his clients that he used the Cayman Islands because of the banking secrecy laws in that country. The use of a country's banks in more than one conspiracy does not make the conspiracies the same.

Bryan himself lived in the United States until December, 1980, when he moved to the Cayman Islands. After that, franchise

offices of USTPS began to appear in major cities all over the nation. The Dallas indictment alleges that defendants in the Dallas conspiracy operated franchise offices in Irvine, California; Plymouth, Massachusetts; Houston, Texas; Dallas, Texas; and Charleston, South Carolina; and that they committed acts in the Cayman Islands; La Grange, Georgia; Miami, Florida; Irvine, California; Plymouth, Massachusetts; Houston, Texas; Dallas, Texas; St. Paul, Minnesota; and Charleston, South Carolina. The Portland indictment does not allege that any defendant operated any franchise office, but alleges that the four defendants committed acts in furtherance of the conspiracy in the states of Oregon, California, and in the Cayman Islands, and conducted one seminar in each of the states of Nevada, Washington, and Illinois.

Bryan submits the transcript of the Portland trial in connection with his motion. Bryan directs the Court to pages where the three tax shelters which he used in the two conspiracies were mentioned, where the Cayman Islands and use of secrecy laws were mentioned, where the United States Tax Planning Corporation (as distinguished from the USTPS) and the USTPS were mentioned, and where franchise offices were mentioned. The Court has read the transcript and finds nothing to support Bryan's claim of only one conspiracy. As stated earlier, the mere use of similar vehicles to defraud the United States in two different conspiracies does not make the conspiracies one and the same. Nor does the use of one country's secrecy laws in two different conspiracies make them one conspiracy. Notably, the United States Tax Planning Corporation (USTPC), mentioned several times in the transcript is a different entity from the USTPS. The USTPC was an Oregon corporation used by Bryan in the promotion of his tax shelters in the Portland conspiracy. The operation of the USTPS is described in the Dallas indictment; the USTPC is not even mentioned in the Dallas indictment.

### VI. Conclusion

In this case, the Government is not attempting to prosecute Bryan separately for each of the tax shelters he promoted during a given time period. Instead, it is prosecuting him for two separate conspiracies, occurring during different time periods marked by the event of Bryan fleeing to the Cayman Islands, each involving different defendants with different roles, each involving very different structures of schemes to defraud, but using the same country's banking secrecy laws and using similar tax shelters in each conspiracy. The Court finds that the Government has established by a preponderance of the evidence that Defendant James G. Bryan was, in fact, involved in two separate conspiracies to defraud the United States, and concludes that Defendant's Motion to Dismiss for Double Jeopardy should be denied.

It is therefore ORDERED that Defendant Bryan's Motion to Dismiss for Double Jeopardy is denied.