ROBERT C. HOYE AND SHIRLEY HOYE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hoye v. Commissioner
Docket No. 22589-87
United States Tax Court
T.C. Memo 1990-57; 1990 Tax Ct. Memo LEXIS 57; 58 T.C.M. (CCH) 1338; T.C.M. (RIA) 90057; February 8, 1990
Ron Scharf, for the petitioners. J. Mack Karesh, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined the following deficiencies in petitioners' Federal income taxes and additions to tax for the following taxable years: Additions to Tax
Taxable
Section
Section
Year
Deficiency
6653(a)(1) [1]
6653(a)(2)
6661
1983
$ 30,640.00
$ 1,532.00 *
$ 7,660.00
1984
14,903.24
745.16 *
3,725.81
After a concession by petitioners, [2] the issues for our decision are: (1) Whether petitioners may deduct depreciation expense and claim an investment tax *60 credit with respect to a motor home; (2) whether petitioners may deduct depreciation expense on their driveway and machine shed; (3) whether petitioners are entitled to an 85-percent business usage in determining depreciation and operating expenses with respect to two automobiles; (4) whether petitioners may deduct home office expenses pursuant to section 280A; (5) whether petitioners may deduct depreciation expense on a garage located at their residence; (6) whether petitioners may deduct expenses incurred in connection with attending a seminar in Orlando, Florida; (7) whether petitioners are liable for additions to tax pursuant to sections 6653(a)(1), 6653(a)(2), and 6661. FINDINGS OF FACT Some of the facts of this case have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by this reference. Robert C. Hoye and Shirley Hoye (petitioners) resided in New Offenburg, Missouri, at the time they filed their petition in this case. Robert C. Hoye (Dr. Hoye) is a physician specializing in general *61 surgery, thoracic surgery, and surgical oncology. His medical office (Office) is located in Ste. Genevieve, Missouri. He is a surgeon on the staff of Ste. Genevieve Hospital, Ste. Genevieve, Missouri, and Jefferson Memorial Hospital, Festus, Missouri (Jefferson Memorial). Dr. Hoye and his wife Shirley reside in New Offenburg, Missouri, where he maintains a laboratory for his aspiration cytology biopsy practice. Their home is 10 miles from the Office and the Ste. Genevieve Hospital and 30 miles from the Jefferson Memorial Hospital. The Ste. Genevieve Office and hospital are 30 miles from Jefferson Memorial. In 1982, Dr. Hoye was asked by the Jefferson Memorial Administrator to apply for practice privileges and to begin a thoracic surgery and surgical oncology practice at Jefferson Memorial. Jefferson Memorial is a rural hospital and had no personnel who were familiar with or trained in thoracic or oncological surgery. Dr. Hoye, if accepted on the Jefferson Memorial staff, would be introducing thoracic surgery to the hospital which had not been routinely performed there before. Dr. Hoye applied for practice privileges at Jefferson Memorial. Membership on the medical staff of *62 Jefferson Memorial is extended only to physicians who meet the qualifications for membership which are reviewed annually. One of the qualifications for membership for the position that he sought required Dr. Hoye to maintain a residence in Jefferson County, Missouri, the county in which Jefferson Memorial was located. Dr. Hoye's permanent residence was in Ste. Genevieve County. In 1982 and early 1983, Dr. Hoye rented an apartment in the Festus area that was located near Jefferson Memorial. It took Dr. Hoye approximately 15 to 20 minutes to go from the apartment to the intensive care unit at Jefferson Memorial. His residency status was approved for 1982 as meeting the qualifications for membership. The nature of Dr. Hoye's medical practice required in some cases his continuous post-surgical availability at Jefferson Memorial. Because there were no resident or intern physicians available and the nursing and respiratory staff were not familiar with or trained in thoracic or oncological surgery, Dr. Hoye had to be immediately available after major surgery, 24 hours a day for a period of up to 5 days. Due to the nature of Dr. Hoye's medical practice, however, he found that the *63 apartment was too far from Jefferson Memorial to enable him to provide adequate care for his post-operative patients. As a result, he looked for an alternate living arrangement that would allow him to be closer to Jefferson Memorial. There was one motel in Festus, Missouri, which was approximately 3 miles from Jefferson Memorial. The motel was in poor condition and Dr. Hoye had no way of knowing when it would be vacant or full. In May of 1983, Dr. Hoye purchased a fully self-contained 33-foot-long Bluebird motor home (the Motor Home) for $ 192,215. He rented a pad three blocks from Jefferson Memorial on which to park the Motor Home and had a telephone line and other utilities installed at the pad. When it was necessary for Dr. Hoye to be in immediate contact with a patient following surgery, he parked the Motor Home in the Jefferson Memorial parking lot and lived in it. In 1983, Dr. Hoye performed 16 major and 133 minor surgeries at Jefferson Memorial. Subsequent to performing three of the major surgeries, Dr. Hoye lived in the Motor Home for a few days. In 1984, he performed nine major surgeries and 154 minor surgeries and used the Motor Home after five of the major surgeries. *64 When the Motor Home was not at the Jefferson Memorial parking lot, it was at the pad or at Dr. Hoye's residence in New Offenburg where it was stored in a machine shed. During 1983 and 1984, Dr. Hoye used the Motor Home in his thoracic and oncological surgical practice, to attend medical meetings and seminars, for investment meetings, and for personal and recreational purposes. The hospital board, executive committee, and surgical department approved Dr. Hoye's residency status for the taxable years 1983 and 1984. In addition to using the Motor Home to live in after performing major surgery, Dr. Hoye traveled in the Motor Home to seminars and meetings because of his fear of flying. In 1983, Dr. Hoye traveled to Orlando, Florida, in the Motor Home to attend a tax planning seminar. The seminar was conducted by an organization called Practice Management Services, Inc. Dr. Hoye claimed $ 2,804 in expenses relating to attending the seminar. The Motor Home was driven the following number of miles: 1983 1984
Round trip from residence
to medical conventions
2,647
9,095
Round trip from residence to
investment seminar
2,253
0
Round trip from residence to
Jefferson Memorial
183
320
Pleasure
1,840
1,652
*65 Based upon these figures, petitioners claimed a 73 percent business use of the Motor Home in 1983. Petitioners deducted depreciation expense on the Motor Home for the taxable years 1983 and 1984 in the amount of $ 19,995 and $ 29,326 and claimed an investment tax credit for the taxable year 1983 in the amount of $ 14,032. The claimed depreciation and investment tax credit were based upon the claimed percentage of business mileage of the Motor Home. Dr. Hoye maintains a laboratory for his aspiration cytology biopsy practice in the basement of his home. The practice of aspiration cytology biopsy is uncommon in the United States. He learned this technique at the Karolinska Institute in Stockholm, Sweden in 1969. The laboratory is equipped with a table area with running water for staining and preparing slides, a desk, and a microscope. The microscope was purchased in 1970 by Dr. Hoye and one of its specific functions was for reading this type of slide material. There is an area for dictating and typing reports, as well as for slide storage. Dr. Hoye's aspiration cytology biopsy practice consisted of staining and preparing cells and analyzing them under a microscope to make *66 a reading as to whether they were malignant. The slide preparation and study is done at his laboratory. Fifty percent of the lab work came from his Office patients and the remaining 50 percent came from hospital consultations. Billings to the patients for the aspiration cytology biopsy work was performed in Dr. Hoye's Office in Ste. Genevieve, Missouri. The other work performed by Dr. Hoye outside his home office was obtaining the tissue to be analyzed. Dr. Hoye's income from his aspiration cytology biopsy practice was $ 8,000 and $ 10,000 for the taxable years 1983 and 1984. For the taxable years 1983 and 1984 petitioners claimed depreciation expense in the amount of $ 2,455 for each year and utility expenses in the amount of $ 574 and $ 626 based upon their claim that 29 percent of the use of their residence was for an office in the home. In addition, petitioners claimed depreciation expense in the amount of $ 811 for the taxable year 1983, the total cost of maintaining an alarm system in their home. Petitioners' home in New Offenburg, Missouri, is located on approximately 400 acres of land which Dr. Hoye operated as a farm during the taxable years in issue. During 1983 *67 and 1984, he stored farm equipment in a machine shed on the farm. Also stored in the machine shed were medical Office records and the Motor Home. Dr. Hoye made improvements to a driveway which leads to a garage, in which he parks three vehicles, and the machine shed. Petitioners claimed one-half of the depreciation expense with respect to the improvements made to the driveway in the amount of $ 180 for the taxable year 1984. Petitioners claimed depreciation with respect to the machine shed in the amount of $ 1,625 and $ 1,355 for the taxable years 1983 and 1984. Dr. Hoye owns a Mercedes and a Toyota which he uses in traveling between his Office and Jefferson Memorial as well as for personal transportation. He maintained thorough records with respect to travel to conventions and seminars and travel to, from, and between his home, Office, Ste. Genevieve Hospital, and Jefferson Memorial. Petitioners deducted automobile operating expenses and depreciated each vehicle for the taxable years 1983 and 1984 based upon an 85-percent business usage of the automobiles. With respect to the Toyota, petitioners claimed an investment tax credit in the taxable year 1983 based upon an 85-percent *68 usage. Petitioners garage these vehicles as well as a third personal use automobile in a three-car garage. Petitioners depreciated two-thirds of the garage for the taxable years 1983 and 1984 and claimed depreciation expense for each of the taxable years in the amount of $ 359. Dr. Hoye consulted with an accounting firm and in good faith relied upon their advice after full disclosure as to the correctness of the deductions taken on petitioners' 1983 and 1984 Federal income tax returns. The Commissioner determined deficiencies in petitioners' Federal income taxes for the taxable years 1983 and 1984. He disallowed the investment tax credit for the taxable year 1983 and the depreciation on the Motor Home for the taxable years 1983 and 1984 as it was not established that the Motor Home was ordinary or necessary to Dr. Hoye's trade or business. Since it was not established that the Motor Home was an ordinary or necessary business expense, the Commissioner disallowed the depreciation on the machine shed that was used to store the Motor Home. The Commissioner disallowed depreciation on the garage and disallowed the expenses and depreciation associated with the office in the home for *69 the taxable years 1983 and 1984 because Dr. Hoye's home office did not meet the requirements of section 280A. The Commissioner disallowed depreciation with respect to the driveway for the taxable year 1984 because the improvements made to the driveway were not ordinary and necessary business expenses. With respect to the two automobiles, the Commissioner determined that for the taxable years 1983 and 1984 petitioners were allowed depreciation and operating expenses for the Mercedes based upon a 67-percent business usage and a 70-percent business usage for depreciation, operating expenses, and an investment tax credit for the Toyota. The Commissioner disallowed all of the expenses associated with the tax planning seminar as they were not allowable business or investment expenses in accordance with sections 162 or 212. In addition, the Commissioner determined that petitioners were liable for additions to tax pursuant to sections 6653(a)(1), 6653(a)(2), and 6661 for the taxable years 1983 and 1984. OPINION Issue 1. Motor Home Expenses
The first issue for our decision is whether petitioners are entitled to depreciation expense for the taxable years 1983 and 1984 in the amount *70 of $ 19,995 and $ 29,326 and to an investment tax credit for the taxable year 1983 in the amount of $ 14,032 all with respect to the Motor Home. On their joint Federal income tax returns for the taxable years 1983 and 1984 petitioners deducted the depreciation and claimed the investment credit on the Motor Home on Schedule C. The deductions and investment tax credit were based upon the ratios that the miles driven for business purposes bore to the total miles driven. In the statutory notice of deficiency mailed to petitioners, the Commissioner disallowed all of the depreciation claimed on the Motor Home "since it has not been established that the motor home was ordinary or necessary to your trade or business, in accordance with section 162 of the Internal Revenue Code." In addition, the Commissioner determined that petitioners had not established the basis of the Motor Home, and accordingly, no depreciation deduction was allowed pursuant to section 168. As a result of his determination that the Motor Home was not a business asset, the Commissioner determined that no investment tax credit would be allowed with respect to the Motor Home. Initially, we note *71 that the parties stipulated the bill of sale for the Motor Home and respondent did not argue in his briefs that petitioners failed to establish the basis of the Motor Home for purposes of depreciation and the investment tax credit. Accordingly, we hold that respondent has abandoned his position on the failure of petitioners to establish basis. Theodore v. Commissioner, 38 T.C. 1011, 1041 (1962); Miami Valley Coated Paper Co. v. Commissioner, 28 T.C. 492, 497 (1957). The language of the statutory notice of deficiency conditions allowance of the deduction for depreciation (ACRS under section 168) and the investment tax credit upon the Motor Home being "ordinary and necessary to your trade or business, in accordance with section 162." However, petitioners claimed no deductions under section 162. They claimed depreciation under section 168 (ACRS) and an investment tax credit under section 48. The depreciation deduction and investment tax credit are allowable on property used in a trade or business or property held for the production of income. Sec. 168(a); sec. 167(a)(1) and (2); sec. 38; sec. 48(a)(1). Section 162 is not involved in the allowance *72 of the deduction for depreciation or the investment tax credit. Respondent apparently recognized his untenable position expressed in the statutory notice of deficiency because he did not argue in his briefs the position he took in the statutory notice of deficiency. We, therefore, hold that he has abandoned the position he took in the statutory notice of deficiency. Theodore v. Commissioner,supra; Miami Valley Coated Paper Co. v. Commissioner,supra.
Thus, rather than arguing that the Motor Home was not ordinary and necessary to Dr. Hoye's trade or business, respondent, in his briefs, argues that petitioners are not entitled to depreciation or the investment tax credit because the amounts claimed are unreasonable. Respondent cites General Bancshares Corp. v. Commissioner, 326 F.2d 712 (8th Cir. 1964); Interstate Drop Forge Co. v. Commissioner, 326 F.2d 743 (7th Cir. 1964); Commissioner v. Lincoln Electric Co., 176 F.2d 815 (6th Cir. 1949), on remand 17 T.C. 1600 (1952); and Mountain Paper Products Corp. v. United States, 287 F.2d 957 (2d Cir. 1961), in *73 support of his position. Petitioners, in their briefs, do not complain that respondent has untimely raised a new issue or that they are surprised by the position taken by respondent. However, the cases cited by respondent involve deductions claimed under section 162. As we have previously decided that petitioners claimed no deductions with respect to the Motor Home under section 162, the cases cited by respondent are not authority. Petitioners are allowed depreciation and an investment tax credit for the Motor Home if it is partially used in Dr. Hoye's trade or business. Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 744 (1973). When property is used partly for business purposes and also for personal purposes, depreciation is deductible to the extent of its business use. International Artists, Ltd. v. Commissioner, 55 T.C. 94, 105 (1970). Respondent does not challenge the allocation that petitioners used in computing the depreciation deduction and the investment tax credit. The allocation was based upon the number of business miles driven in the Motor Home as compared to the total mileage driven in each taxable year. There are no provisions *74 which otherwise limit the deduction and credit for the taxable years in which they were claimed. There is no question that the Motor Home was used in Dr. Hoye's trade or business. Dr. Hoye drove the Motor Home to medical conventions and he drove it to Festus and resided in it when he was performing surgery at Jefferson Memorial. The details of this business use are set forth in our findings of fact, with respect to which respondent has no objection. Petitioners are entitled to the depreciation deduction in the amount claimed for 1984. The depreciation deduction and investment tax credit for 1983 will be reduced from the 73 percent claimed to 41 percent in order to reflect disallowance of the business use portion for attending the investment seminar as explained in Issue 6. Issue 2. Depreciation of the Machine Shed and Driveway
Petitioners claimed one-half of the depreciation expense with respect to the improvements made to the driveway in the amount of $ 180 for the taxable year 1984. In addition, petitioners claimed depreciation expense in the amount of $ 1,625 and $ 1,355 for the taxable years 1983 and 1984 for a machine shed on the farm. Respondent contends that *75 petitioners are not entitled to depreciation expense on the machine shed as it was used to a large extent to store the Motor Home. Respondent contends that, because depreciation is not allowable on the Motor Home, depreciation should not be allowed on the machine shed storing the Motor Home. The machine shed was used to store farm equipment, medical office records, and the Motor Home. Respondent does not dispute that Dr. Hoye's farming activity or medical practice were trades or businesses. We have decided that petitioners are allowed to deduct depreciation expense with respect to the Motor Home for the taxable years 1983 and 1984. Petitioners are entitled to the depreciation deduction in the amounts claimed for the taxable years 1983 and 1984. Respondent's next contention is that petitioners are not entitled to depreciation expense with respect to the driveway as it was used as a family driveway for numerous personal purposes. Petitioners contend that the driveway was used 80 percent of the time for farming and medical practice purposes and 20 percent of the time for personal purposes. However, petitioners have failed to bring forth any evidence substantiating these percentages. *76 It is impossible for us to calculate what percentage of the time the driveway was used in Dr. Hoye's farming and medical business as opposed to petitioners' personal use. Petitioners have failed in their burden of proof with respect to the depreciation of the improvements made to the driveway. Issue 3. Automobile Depreciation
Petitioners contend that they are entitled to an 85-percent business usage on their Mercedes in calculating depreciation and operating expenses and on their Toyota in determining depreciation, operating expenses, and investment tax credit. Respondent argues that petitioners are entitled to a 67-percent business usage in calculating depreciation and operating expenses on the Mercedes and a 70-percent business usage in calculating depreciation, operating expenses, and investment tax credit on the Toyota for the taxable years 1983 and 1984. Petitioners claim that Dr. Hoye's records for the taxable years 1983 and 1984 document at least the claimed 85 percent business use of the vehicles. Respondent argues that the mileage records show that Dr. Hoye made many nondeductible commuting trips between his home and Jefferson Memorial and his Office. In particular, *77 respondent contends that the major difference between the two parties' calculations concerns the round trip mileage total from Dr. Hoye's home to Jefferson Memorial in the Mercedes. It is well established that expenses incurred in commuting between home and place of business are personal and nondeductible. Commissioner v. Flowers, 326 U.S. 465, 473-474 (1946); Heuer v. Commissioner, 32 T.C. 947, 951-952 (1959), affd. 283 F.2d 865 (5th Cir. 1960). Expenses incurred on trips between places of business are deductible. Steinhort v. Commissioner, 335 F.2d 496, 503-504 (5th Cir. 1964), affg. and remanding a Memorandum Opinion of this Court; Heuer v. Commissioner, 32 T.C. at 953. In addition, the cost of transportation incurred in travel between the taxpayer's home office and other business locations where the taxpayer's residence is his principal place of business with respect to the activities involved are deductible. Curphey v. Commissioner, 73 T.C. 766, 777-778 (1980). Where the taxpayer's residence is not his principal place of employment, however, expenses incurred in traveling *78 between his residence and job sites are nondeductible commuting expenses. Smith v. Warren, 388 F.2d 671 (9th Cir. 1968); Green v. Commissioner, 59 T.C. 456, 459-460 (1972); Heuer v. Commissioner, supra.
The parties' briefs with respect to this issue are unsatisfactory. Dr. Hoye maintained thorough records with respect to the business use of the automobiles for the taxable years 1983 and 1984. However, petitioners have dumped these records on the Court apparently in an effort to force the Court to sort through over 800 pages of travel logs so that we may classify each and every trip made by Dr. Hoye during the taxable years in issue. It is not this Court's responsibility to ferret out the facts in support of petitioners' contention. [3]
We have set forth the law with respect to this issue and, if the parties cannot resolve or settle this matter in connection with the Rule 155 computation we will direct the parties to file supplemental briefs specifically setting forth the facts *79 upon which to resolve this conflict. Issue 4. Office in the Home
Petitioners contend that they are entitled to deductions for expenses associated with Dr. Hoye's laboratory in their home. They claim that 29 percent of the area of their home is used for laboratory purposes. For the taxable years 1983 and 1984, petitioners claimed depreciation expense and utility expenses in relation to the 29-percent usage. In addition, for the taxable year 1983 petitioners claimed the full amount of $ 811 as depreciation expense for the cost of maintaining an alarm system in their home. Section 280A(a) provides that, with certain exceptions, "no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." This rule of nondeductibility shall not apply to "any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis" as "the principal place of business for any trade or business of the taxpayer." Sec. 280A(c)(1). Petitioners, in relying upon this exception, contend that Dr. Hoye's aspiration cytology biopsy *80 practice is conducted principally from his laboratory and is a trade or business separate from his medical practice. Respondent does not contest that Dr. Hoye's laboratory was used exclusively for his trade or business. Instead, respondent contends that Dr. Hoye's aspiration cytology biopsy practice is not a trade or business separate and apart from his medical practice. Respondent argues further that if we should find that the aspiration cytology biopsy practice is a separate trade or business of Dr. Hoye, that we must decide whether Dr. Hoye's home office is his principal place of that business. In Curphey v. Commissioner,supra, we held that a taxpayer may have two trades or businesses or be engaged in a profession and a business at the same time, and that the office in the home may be the "principal place of business" of that second trade or business. The test is whether a taxpayer's activities are sufficiently regular, systematic, and continuous to justify a conclusion that such activities constitute a trade or business. Curphey v. Commissioner, 73 T.C. at 775. Whether an activity is a separate trade or business is a question of fact *81 and is decided by examining the nature of the activities and duties involved. Curphey v. Commissioner, supra; Davis v. Commissioner, 65 T.C. 1014, 1019 (1976). If substantial differences exist in the tasks and activities of various occupations or employments, then each such occupation or employment constitutes a separate trade or business. Glenn v. Commissioner, 62 T.C. 270, 275 (1974). Dr. Hoye's profession is that of a physician. He conducted an aspiration cytology biopsy practice in his laboratory in his home. Dr. Hoye learned this technique at the Karolinska Institute in Stockholm, Sweden, in 1969. The laboratory has a table area with running water for staining and preparing slides, a desk, and a sophisticated microscope. The microscope was purchased in 1970 and one of its functions was for reading this type of slide material. There is a slide storage area and an area for dictating or typing reports. Fifty percent of the lab work came from patients Dr. Hoye saw in his oncological Office practice and the remaining 50 percent came from hospital consultations. Dr. Hoye's activities at the laboratory consisted of preparing *82 slides and analyzing cells under the microscope to determine whether the cells were malignant. The only activities of Dr. Hoye performed outside his laboratory were obtaining the tissue to be analyzed and billing the patients for the laboratory work. Dr. Hoye's income from his aspiration cytology biopsy practice was $ 8,000 and $ 10,000 for the taxable years 1983 and 1984. We find that Dr. Hoye's aspiration cytology biopsy practice is a separate and distinct business from his medical practice. The activities of his medical practice are substantially different from that of his laboratory work. The essence of his profession as a physician is the treatment of patients. The practice of aspiration cytology is, as Dr. Hoye testified, uncommon in the United States and involves cell analysis. Specifically, the practice of this medical technique consists of the spreading of tissue cells on a slide and staining the slide with chemicals. The cells are then analyzed under a microscope to determine if they are malignant. His laboratory is fully equipped for this type of practice. Dr. Hoye's income is generated by the work that he does in the laboratory and is a supplemental source of income *83 which complemented his medical office practice income. We do not think it is disqualifying that Dr. Hoye's profession as a physician and his aspiration cytology biopsy practice are closely related. In fact, the operation of two trades or businesses by a taxpayer is more likely to be in fields which are closely related. Having decided that Dr. Hoye's aspiration cytology biopsy practice constitutes a separate trade or business, we must decide whether the laboratory in his home is the principal place of business of such practice. Dr. Hoye obtained the tissue which he analyzed from his patients, 50 percent from consultations in his Office and 50 percent from consultations at the hospitals. The only other activities of the aspiration cytology biopsy practice conducted in the Office of his medical practice were preparation of the billings to his patients. Respondent argues that the principal place of business of Dr. Hoye was the Office for his medical practice in Ste. Genevieve, Missouri. Respondent makes no argument that the principal place of business is either of the hospitals. We have recently expressed our views on the principal place of business in the context of home office *84 expenses in Soliman v. Commissioner, 94 T.C. (Jan. 18, 1990). Applying the rationale of that opinion, we hold that the principal place of business of the aspiration cytology biopsy practice of Dr. Hoye was the laboratory in his home. Accordingly, petitioners are allowed a home office deduction in relation to their 29-percent usage of their home with respect to the depreciation expense and utility expenses for the taxable years 1983 and 1984. Petitioners are allowed a deduction of 29 percent of the $ 811 claimed depreciation expense for the taxable year 1983 for the alarm system. [4]
Issue 5. Depreciation of the Garage
Petitioners contend that they should be entitled to deduct as depreciation expense two-thirds of the depreciation of the garage at their residence as two-thirds of the garage is used to park the Mercedes and Toyota which are used in Dr. Hoye's medical practice. For the each of the taxable years 1983 and 1984, petitioners claimed depreciation *85 expense in the amount of $ 359. Petitioners cite sections 1.280A-2(d) and 1.280A-2(g), Proposed Income Tax Regs., 48 Fed. Reg. 33325 (July 21, 1983), in support of their position. We begin by noting that proposed regulations are not authoritative sources of Federal tax law. Eller v. Commissioner, 77 T.C. 934, 946 (1981). Section 1.280A-2(d), Proposed Income Tax Regs., "provides an exception to the general rule of section 280A(a) for any item to the extent that the item is allocable to a separate structure which is appurtenant to, but not attached to, the dwelling unit and is used exclusively and on a regular basis in connection with the taxpayer's trade or business." Petitioners' argument is without merit. Dr. Hoye testified that the Mercedes and the Toyota were used for personal purposes. Petitioners have not met the exclusivity requirement of section 280A. Issue 6. Section 212(3) Deductions
Petitioners contend that they should be allowed, as a deduction pursuant to section 212(3), expenses incurred in connection with attending a tax planning seminar. Petitioners deducted in the taxable year 1983 $ 2,804 in expenses incurred in attending *86 a tax planning seminar in Orlando, Florida. Respondent contends that the expenses are not deductible because the seminar promoted a fraudulent tax shelter scheme which ultimately resulted in criminal prosecution. Williams v. Kunze, 806 F.2d 594 (5th Cir. 1986); United States v. Bryan, 677 F.Supp. 482 (N.D. Tex. 1987). Section 212(3) provides a deduction for payments incurred for legitimate tax advice and tax planning. [5] It is incumbent upon petitioners to prove that a specific portion of the expenses incurred in connection with the seminar were allocated for the payment of a deductible item. The tax planning seminar that petitioners attended promoted fraudulent tax shelters. Petitioners have failed to prove that any portion of the $ 2,804 was for any deductible purpose under section 212(3). With respect to this amount we sustain the Commissioner's determination. Issue 7. Additions to Tax
The Commissioner determined that petitioners were liable for additions to tax for the taxable years 1983 *87 and 1984 pursuant to section 6653(a)(1) and (2) and section 6661. Section 6653(a)(1) imposes an addition to tax in the amount of 5 percent of an underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of the rules and regulations. Section 6653(a)(2) imposes a further addition to tax in an amount equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. Negligence under section 6653(a)(1) and (2) is defined as lack of care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Dr. Hoye is a surgeon who was not sophisticated in the area of Federal taxation. Dr. Hoye consulted an accounting firm and in good faith relied upon their advice after full disclosure as to the correctness of the deductions taken on petitioners' 1983 and 1984 Federal income tax returns. We do not think petitioners' reliance was unreasonable. Accordingly, we find that the underpayments of tax with respect to the issues that petitioners have not prevailed on were not due to petitioners' negligence or intentional *88 disregard of the rules and regulations within the meaning of section 6653(a). Section 6661 provides for an addition to tax for a substantial understatement of Federal income tax liability. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000, whichever is greater. Sec. 6661(b)(1). This addition to tax is applicable to returns the due date for filing of which, regardless of extensions, is after December 31, 1982. Petitioners have prevailed on all of the issues with the exception of repair and maintenance expense in the amount of $ 575.81 for the cost of maintaining an alarm system in their home for the taxable year 1983, depreciation on the garage in the amount of $ 359 for the taxable years 1983 and 1984, depreciation of the improvements made to the driveway in the amount of $ 180 for the taxable year 1984, and convention expenses in the amount of $ 2,804 for the taxable year 1983. Depending upon the parties' resolution of the percentage business use of the automobiles, petitioners may or may not be liable for a deficiency with respect to that issue. Nevertheless, regardless of the outcome of that *89 issue, we have recalculated the adjustments to income taking into consideration our holding and conclude that petitioners are not liable for the addition to tax pursuant to section 6661 as the understatement does not fall within the parameters of section 6661(b)(1)(A). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code in effect for 1983 and 1984, all rule numbers refer to the Tax Court Rules of Practice and Procedure. * 50 percent of interest due on $ 30,640.00 for the taxable year 1983 and on $ 14,903.24 for the taxable year 1984.↩
2. Petitioners have conceded that $ 1,772 in professional expenses were claimed twice on their 1983 Federal income tax return.↩
3. Cecere v. Commissioner, T.C. Memo. 1975-371, affd. without published opinion 547 F.2d 1159↩ (3d Cir. 1976).
4. Although petitioners reported the $ 811 expense on their 1983 Federal income tax return as depreciation, they correctly argue in their brief that it should be reported as repair and maintenance expense.↩
5. Crowder v. Commissioner, T.C. Memo. 1984-543, affd. by unpublished opinion 802 F.2d 466↩ (9th Cir. 1986).